**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| AIDA KHALIL, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>CENTER FOR VEIN RESTORATION (MD), LLC,<br><br>      Defendant. | Case No.: 8:24-cv-03593-DLB |
| EDWARD CAMERON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>CENTER FOR VEIN RESTORATION (MD), LLC,<br><br>      Defendant. | Case No.: 8:24-cv-03654 |
| JESSICA KAYROUZ, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>CENTER FOR VEIN RESTORATION (MD), LLC,<br><br>      Defendant. | Case No.: 8:24-cv-03667 |

| | |
|---|---|
| KATRINA KELLEY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>CENTER FOR VEIN RESTORATION (MD), LLC,<br><br>      Defendant. | Case No.: 8:24-cv-03676 |
| LEE CONRAD<br>937 Josephine Crest Apt 6<br>Virginia Beach, VA 23464<br><br>*individually and on*<br>*behalf of all others similarly situated*,<br><br>    Plaintiff,<br><br>      v.<br><br>CENTER FOR VEIN RESTORATION (MD), LLC,<br><br>    Defendant. | Case No.: 8:24-cv-03702 |
| PATRICIA KNOTT, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>      v.<br><br>CENTER FOR VEIN RESTORATION (MD), LLC,<br><br>    Defendant. | Case No.: 8:24-cv-03707 |

**PLAINTIFFS' UNOPPOSED MOTION TO CONSOLIDATE ACTIONS,
APPOINT INTERIM CLASS COUNSEL, AND SET A SCHEDULE
<u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>[1]**

---

[1] Plaintiffs' counsel conferred with counsel for Defendant on December 20, 2024. Defendant does not oppose consolidation, and Defendant takes no position on Plaintiffs' proposed leadership structure.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 2

II.    COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND ............... 2

    A. The Data Breach ........................................................................................ 2

    B. Consolidation of the Related Actions ....................................................... 3

III.    ARGUMENT AND AUTHORITIES ......................................................... 3

    A. Legal Standard for Consolidation ............................................................. 3

    B. The Related Actions Should be Consolidated with *Khalil*........................ 4

    C.  Legal Standard for Appointment of Interim Class Counsel..................... 5

      i. Appointment of Interim Class Counsel is Appropriate........................... 6

IV.    CONCLUSION.......................................................................................... 23

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adedipe v. U.S. Bank, Nat. Ass'n,*
  2014 WL 835174 (D. Minn. Mar. 4, 2014)................................................................ 7

*Baldwin v. Nat'l W. Life Ins. Co.,*
  2021 WL 4206736 (W.D. Mo. Sept. 15, 2021)....................................................... 13

*Bedont v. Horizon Actuarial Servs., LLC,*
  2022 WL 3702117 (N.D. Ga. May 12, 2022).......................................................... 3

*Biondi v. Scrushy,*
  820 A.2d 1148 (Del. Ch. 2003)............................................................................. 23

*Bloom v. Jenny Craig, Inc.,*
  No. 1:18-cv-21820-KMM, 2018 U.S. Dist. LEXIS 51686 (S.D. Fla. 2018) ........... 18

*Brown v. Accellion, Inc.,*
  2022 WL 767279 (N.D. Cal. Mar. 14, 2022)........................................................... 3

*Buettgen v. Harless,*
  2011 U.S. Dist. LEXIS 53888 (N.D. Tex. May 19, 2011)....................................... 9

*Buonasera v. Honest Co., Inc.,*
  318 F.R.D. 17 (S.D. N.Y. 2016)............................................................................. 6

*Carlin v. Dairy America, Inc.,*
  2009 WL 1518058 (E.D. Cal. May 29, 2009) ........................................................ 23

*Charlie v. Rehoboth McKinley Christian Healthcare Services,*
  2022 WL 1078553 (D.N.M. April 11, 2022) .......................................................... 13

*Dependable Component Supply Corp. v. Murata Mfg. Co.,*
  2018 WL 3388548 (N.D. Cal. Apr. 27, 2018) ......................................................... 8

*Dipuglia v. US Coachways, Inc.,*
  No. 17-23006-Civ, 2018 U.S. Dist. LEXIS 72551 (S.D. Fla. 2018) ....................... 18

*Farrell v. Bank of America, N.A.,*
  327 F.R.D. 422 (S.D. Cal. 2018) ........................................................................... 11

*Griffey v. Magellan Health Inc.,*
  2020 WL 5981904 (D. Ariz. Oct. 8, 2020) .............................................................. 3

*Home Depot v. Jackson,*
  139 S. Ct. 1743, 204 L. Ed. 2d 34 (2019)......................................................... 13, 14

*In re Air Crash Disaster at Fla. Everglades on Dec. 29*,
  549 F.2d 1006 (5th Cir. 1977)..................................................................................... 4

*In re Aluminum Phosphide Antitrust Litig.*,
  1994 WL 481847 (D. Kan. May 17, 1994) ............................................................... 20

*In re Consol. Parlodel Litig.*,
  182 F.R.D. 441 (D.N.J. 1998) ..................................................................................... 3

*In re IndyMac ERISA Litig.*,
  2008 WL 11343122 (C.D. Cal. Oct. 7, 2008) ............................................................ 7

*In re Insulin Pricing Litig.*,
  2017 WL 4122437 (D.N.J. Sept. 18, 2017) .............................................................. 23

*In re Lenovo Adware Litig.*,
  2015 WL 10890657 (N.D. Cal. July 27, 2015) ....................................................... 8, 9

*In re Mun. Derivatives Antitrust Litig.*,
  252 F.R.D. 184 (S.D. N.Y. 2008)......................................................................... 6, 22

*Kjessler v. Zaappaaz, Inc.*,
  2018 WL 8755737 (S.D. Tex. Aug. 31, 2018) .......................................................... 6

*Kubiak v. Barbas*,
  2011 WL 2443715 (S.D. Ohio June 14, 2011) ........................................................ 21

*Marengo v. Miami Resch. Assocs., LLC*,
  No. 1:17-cv-20459-KMW, 2018 U.S. Dist. LEXIS 122098 (S.D. Fla. 2018)........................ 18

*McCreary v. Filters Fast LLC*,
  2021 WL 3044228 (W.D.N.C. July 19, 2021) ......................................................... 12

*Michelle v. Arctic Zero, Inc.*,
  2013 WL 791145, n.3 (S.D. Cal. Mar. 1, 2013)....................................................... 23

*Moehrl v. Nat'l Ass'n of Realtors*,
  No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895 (N.D. Ill. May 30, 2020) ......................... 21

*Moradi v. Adelson*,
  2011 WL 5025155 (D. Nev. Oct. 20, 2011)............................................................. 23

*Purvis v. Aveanna Healthcare, LLC*,
  563 F. Supp. 3d 1360 (N.D. Ga. 2021) ................................................................... 12

*Richey v. Ells*,
  2013 WL 179234 (D. Colo. Jan. 17, 2013)............................................................. 23

*Roe v. Arch Coal, Inc.*,
   2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ............................................................. 5

*Shane White v. Medical Review Institute of America, LLC*, Case,
   No.: 2:22-cv-00082-DBP, 2022 U.S. Dist. LEXIS 132016 (D. Utah July 22, 2022) ............... 22

*Steele v. United States*,
   2015 WL 4121607 (D.D.C. June 30, 2015) ........................................................... 23

*Syzmczak v. Nissan N. Am., Inc.*,
   2012 WL 1877306 (S.D.N.Y. May 15, 2012) .......................................................... 6

*United States v. Kramer*,
   770 F. Supp. 954 (D.N.J. 1991) ..................................................................... 3

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) ................................................................ 12, 13

## Rules

Fed. R. Civ. P. 23 .......................................................................... *passim*
Fed. R. Civ. P. 42 ...................................................................... 1, 3, 4, 5

## Other Authorities

*9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2383* (2d ed. 1994) ..... 4
Manual for Complex Litigation § 21.11 (4th ed. 2004) ................................................ 5
Manual for Complex Litigation § 10.21 .............................................................. 21
Manual for Complex Litigation § 10.221 ............................................................. 9
Manual for Complex Litigation §§ 10.22 ............................................................ 21

Plaintiffs in the above-captioned actions ("Plaintiffs"), individually, and on behalf of all those similarly situated, respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions ("Related Actions") into to the first-filed *Khalil* action, as well as any other future actions filed or transferred related actions against defendant Center For Vein Restoration (MD), LLC ("Defendant") under the new case style: "*In re Center for Vein Restoration Data Breach Litigation*"; (2) appoint Plaintiffs' leadership structure consisting of Jeff Ostrow of Kopelowitz Ostrow P.A., David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC, A. Brooke Murphy of Murphy Law Firm, and Andrew J. Shamis of Shamis Gentile Class Action Law Firm as Interim Class Counsel (collectively, "Proposed Interim Class Counsel" or "Proposed Interim Co-Lead Counsel") and Donald J. Enright of Levi & Korsinsky, LLP as Interim Liaison Counsel ("Proposed Liaison Counsel"); (3) stay the Related Actions, including any of the Defendant's responsive pleading deadlines, and require the filing of a consolidated class action complaint ("Consolidated Complaint") within 60 days of entry of an order consolidating the cases and appointing leadership; and (4) set the deadline for Defendant's response to the Consolidated Complaint 60 days after the Consolidated Complaint is filed, set the deadline of 60 days thereafter for Plaintiffs' response thereto, followed by 21 days thereafter for the Defendant's reply.

As discussed below, consolidation is proper because each action: (i) is brought against the same Defendant; (ii) is based on the same alleged data incident Defendant discovered on or about October 6, 2024 (the "Data Breach"); (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common alleged factual background and claims asserted in each action, consolidation and the appointment of interim class counsel will streamline litigation and preserve judicial and party resources.

I.      **INTRODUCTION**

Plaintiff, Aida Khalil, filed the first class action complaint against Defendant on December 12, 2024, seeking to hold Defendant liable for its alleged unauthorized disclosure of personally identifiable information ("PII") and protected health information ("PHI") (PII and PHI are collectively referred to herein as "Private Information") belonging to 448,891 individuals affected by the Data Breach. Subsequent to the filing of *Khalil*, the *Cameron* action, the *Kayrouz* action, the *Kelley* action, the *Conrad* action, and the *Knott* action were also filed against Defendant. The Related Actions arise from the same Data Breach, allege the same operative facts, and assert substantially identical claims on behalf of overlapping putative classes, thus making consolidation into the first-filed *Khalil* case, which has the lowest case number, appropriate.

II.     **COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND**

A.      **The Data Breach**

Defendant is a medical services provider that specializes in treating vein diseases. Defendant has locations across the country. *See Cameron* Compl., at ¶ 4. Defendant is alleged to have collected and failed to properly safeguard and protect their Personal Information, resulting in the Data Breach. *Id.* ¶¶ 5-7. In the "Notice of Data Security Incident" letter Defendant sent to Plaintiffs' and putative class members, Defendant advised that Plaintiffs' and putative class members' Private Information was compromised in the Data Breach, including their address, date of birth, Social Security Number, driver's license number, medical record number, diagnosis, lab results, medications, treatment information, health insurance information, provider names, dates of treatment, and/or financial information. Plaintiffs in the above captioned cases filed their complaints as putative class actions on behalf of themselves and all others whose Private

Information was exposed during the Data Breach. The Related Actions seek to remedy Defendant's alleged wrongful conduct and the consequences therefrom.

### B.    Consolidation of the Related Actions

The Related Actions before this Court are substantially the same and consolidation is appropriate.  Each lawsuit arises from the same common set of alleged facts: the Data Breach. Due to each Plaintiffs' reliance on the same set of alleged facts, all Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding, which will preserve party and judicial resources.

## III.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard for Consolidation

Fed. R. Civ. P. 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . ." Fed. R. Civ. P. 42(a)(2). Where two or more actions against the same defendant share key factual and legal questions—including, as here, where the actions arise from the same Data Breach—consolidation under Fed. R. Civ. P. Rule 42(a) is warranted. *Bedont v. Horizon Actuarial Servs., LLC*, No. 1:22-CV-01565-ELR, 2022 WL 3702117 (N.D. Ga. May 12, 2022) (granting consolidation of data breach actions); *Brown v. Accellion, Inc.*, No. 5:21-CV-01155-EJD, 2022 WL 767279 (N.D. Cal. Mar. 14, 2022) (same); *Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2020 WL 5981904, at *2 (D. Ariz. Oct. 8, 2020) (same).

A district court has the sound discretion to determine if a matter should be consolidated. *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998); *see also United States v. Kramer*, 770 F. Supp. 954, 957 (D.N.J. 1991) (explaining that a district court has inherent power to control

the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants) (internal quotations omitted); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted). Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *accord 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2383* (2d ed. 1994).

### B.    The Related Actions Should be Consolidated with *Khalil*.

The Related Actions involve common questions of law and fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing any party.  The Court should therefore consolidate all Related Actions with this first-filed case.

The Related Actions focus on one factual event – Defendant's Data Breach – which was a result of Defendant's alleged failure to protect Plaintiffs and Class Members' PII. Each action alleges the same factual contentions, *i.e.,*: (i) Defendant knowingly violated its obligations to abide by best practices and industry standards in protecting its patients' PII; (ii) these failures enabled an unauthorized third party to intercept, access, and acquire the PII Defendant collected and maintained, putting Class members' PII at a serious and ongoing risk; and (iii) Defendant failed to disclose the full extent of the Data Breach and notify the affected patients in a timely manner. These factual allegations are the gravamen of the Related Actions, thus numerous common questions of fact exist.

Additionally, the legal claims asserted by each plaintiff are substantially similar, including claims for negligence, breach of implied contract, and unjust enrichment. These claims are asserted on a class wide basis, on behalf of similarly defined classes, against the same Defendant. Plaintiffs' claims will rise or fall together. As such, common questions of law pervade these cases.

Accordingly, because the cases arise from the same set of facts—the Data Breach—they are pled as class actions with class action allegations under Federal Rule of Civil Procedure 23, are against the same Defendant and share at least one similar legal claim – negligence – consolidation is appropriate under Federal Rule of Civil Procedure 42(a).

Indeed, consolidation of the Related Actions will allow the parties to avoid duplication during discovery since the Related Cases will involve the same relevant documents and the same individuals from Defendant will be deposed. Consolidation will further the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, while imposing no significant prejudice.

Because consolidation here serves the interest and convenience of both the parties and the Court, through its promotion of judicial economy and efficiency, and doing so will not prejudice any party to the Related Cases, Plaintiffs respectfully request the Court enter an Order consolidating the Related Cases.

### C.      Legal Standard for Appointment of Interim Class Counsel.

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Designating lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See* Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004) ("[D]esignation of interim

counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."); *see, e.g., Roe v. Arch Coal, Inc.*, No. 4:15-cv-910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc*., No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc*., 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig*., 252 F.R.D. 184, 186 (S.D. N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### i.     *Appointment of Interim Class Counsel is Appropriate*

As detailed herein, Jeff Ostrow, David K. Lietz, A. Brooke Murphy, and Andrew J. Shamis are uniquely and well positioned to represent Plaintiffs' and the putative class members' interests

in this case and should be appointed to the Interim Class Counsel. Proposed Interim Co-Lead Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from named in the Related Actions, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Class Counsel's work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

> ### a. Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig*., No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the

breach. Those investigations included, among other things: (i) investigating the facts surrounding the Data Breach; (ii) interviewing numerous individuals injured by the Data Breach; (iii) researching legal claims; (jv) drafting initial pleadings; and (v) organizing Plaintiffs and their counsel and discussing consolidating the Related Actions for unified proceedings and preparing the consolidation and proposed leadership papers.

Given the scope of the Data Breach and the number of victims potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

> **b.** **Proposed Interim Class Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.**

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) (appointing class counsel with substantial experience in class actions and demonstrated knowledge of the relevant law). Proposed Interim Class Counsel have the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel and Proposed Liaison Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

***Jeff Ostrow of Kopelowitz Ostrow P.A.***

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow PA ("KO") and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys. Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions.

KO is counsel of record in more than 200 pending data breach cases. He is currently Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people. Additional examples of other cases in which KO serve as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting 2.5 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients, and *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients.

For about 13 years, KO served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized KO's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which KO served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which KO was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which KO was lead counsel, United States District Judge Jose Martinez

noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

KO has worked productively with Proposed Interim Class Counsel in many other cases. A copy of KO's firm resume is attached. *See* Exhibit 1.

### David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC

David Lietz is a 1991 graduate of Georgetown University Law Center, and is currently a senior partner at Milberg.  He has been licensed to practice law in the District of Columbia since 1991, is a member of the bars of numerous federal district and appellate courts, and has decades of litigation and class action experience. He has represented and is currently representing plaintiffs in a score of class action lawsuits  in  state  and  federal courts throughout the United States. With respect to data privacy cases, Mr. Lietz is currently litigating more than one hundred cases across the country involving data breaches, ransomware attacks, and privacy violations

Over the past four years, Mr. Lietz has been appointed class counsel in no less than 60 data breach or data privacy cases that have been either preliminarily or finally approved by federal and state courts across the country.  A list of Mr. Lietz's appointments as class counsel from 2020 to 2024 is attached hereto as Exhibit 1. Mr. Lietz is also lead counsel on a number of cases that are on the cutting edge of Article III federal court jurisdiction in data breach litigation. Mr. Lietz briefed and argued *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023), where the U.S. Court of Appeals for the First Circuit articulated important principles of Article III standing in data breach cases after the U.S. Supreme Court's decision in *Ramirez v. TransUnion*.

Other noteworthy data breach decisions include *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021); *Charlie v. Rehoboth McKinley Christian Healthcare Services*, Civ. No. 21-652 SCY/KK, 2022 WL 1078553 (D.N.M. April 11, 2022); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *1 (W.D. Mo. Sept. 15, 2021) and *McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228 (W.D.N.C. July 19, 2021).

For his substantial efforts in advancing the state of the law in data breach and cyber-security litigation, in April 2022 Mr. Lietz was named to Law360's 2022 Cybersecurity & Privacy Editorial Board. This 12-person editorial board includes some of the most accomplished attorneys in the country in the cybersecurity and data breach legal field. Mr. Lietz is a frequent speaker on data breach litigation, including at the Harris-Martin Publishing Data Breach Conference in Nashville, Tennessee (September 25, 2024), the 8th Annual Class Action Money & Ethics Conference (May 6, 2024 in New York City), the Harris-Martin Publishing Conference in San Franciso in July 2023, a Strafford Publishing CLE panel discussion on the *Webb v. Injured Workers Pharmacy* case in October 2023, and a presentation at the North Carolina Bar Association 2023 Privacy & Data Security Section Annual Program in October 2023.

Mr. Lietz has been appointed as class counsel in other consumer class action cases and have tried consumer class action cases to verdict before a jury, most recently in *Baez v. LTD Financial Services*, Case No: 6:15–cv–1043–Orl–40TBS (MD Fla.). His experience with class actions also includes a leadership role in a Massachusetts Walmart wage abuse class action, national HMO litigation, the Buspirone MDL, and Louisiana Norplant litigation. In addition to his class action experience, Mr. Lietz has substantial appellate experience, successfully briefing and arguing multiple cases before a number of federal appellate courts, including *Home Depot v. Jackson* at the U.S. Court of Appeals for the Fourth Circuit, and serving as part of the successful

brief-writing and oral advocacy team for *Home Depot v. Jackson*, 139 S. Ct. 1743, 1744, 204 L. Ed. 2d 34 (2019) at the United States Supreme Court.

Prior to concentrating his practice on consumer class action litigation, for almost 20 years Mr. Lietz litigated critical injury and wrongful death actions arising from commercial incidents, such as tractor trailer incidents, industrial explosions, a subway collision, and commercial airplane crashes. He negotiated several million+ dollar settlements, served as lead counsel in multiple civil actions, tried a number of cases to verdict in both jury and bench trials, and argued cases before federal district and appeals courts, and numerous state courts. Mr. Lietz has lifetime verdicts and settlements in excess of $100 million, and consistently achieved settlements in the highest quartile of tort and mass tort cases.

In addition to his personal qualifications, Mr. Lietz brings the support and resources of Milberg to this case on behalf of the putative class. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[2] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court. The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."

The firm currently is involved in some of the largest and well-known class action cases in

---

[2] *See, e.g.*, *In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than one hundred attorneys who work from offices across the United States and in Portugal, the United Kingdom, the Netherlands, and Germany. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.

Simply put, Mr. Lietz and the attorneys at his law firm have substantial experience handling data security and data privacy cases like this one, including some of the largest data privacy litigation in the United States. *See, e.g., In re Blackbaud Data Privacy* MDL No. 2972 (D. S.C.) (where Milberg serves as interim class counsel in a data breach involving millions of consumers). Additional information regarding Mr. Lietz and his firm can be found in the Milberg Firm Resume which is attached as Exhibit 2.

### A. Brooke Murphy of Murphy Law Firm

A. Brooke Murphy is the founding member of Murphy Law Firm. For more than a decade, Ms. Murphy has specialized in representing plaintiffs in class actions and other complex litigation. Ms. Murphy has litigated numerous data breach class actions across the country where she has obtained several successful rulings on issues of standing, pleading, and class certification. Ms. Murphy has similarly overcome common challenges by defendants in data breach class actions, including on matters involving the applicability of arbitration clauses, assertions of privilege or work-product protections, and attempts to exclude expert testimony.

Through her involvement in data breach class actions, Ms. Murphy has worked closely with consulting and testifying experts to assist in the preparation of data security and damages reports. Ms. Murphy has conducted technical depositions of data security personnel, forensic investigators, and information security consultants. Ms. Murphy is also well-skilled in managing

and navigating large document productions and has overseen the search and review of productions involving millions of pages of documents.

Based on her extensive experience, Ms. Murphy has repeatedly been recognized by Oklahoma Super Lawyers. Likewise, numerous courts around the country have appointed Ms. Murphy as class counsel or co-lead counsel in data breach class actions. *See, e.g., In re WorkWave Data Breach Litig.,* Case No. 3:24-cv-10592 (D.N.J.); *In re Fidelity Investments Data Breach Litig.,* Case No. 1:24-CV-12601-LTS (D. Mass.); *In re Gryphon Healthcare LLC Data Breach Litig.* Case No. 4:24-cv-3946 (S.D. Tex.); *Archambault v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC*, Case No. 2:24-cv-1691 (D. Nev.); *Huntley, et al. v. Varsity Brands, Inc.*, Case No. 3:24-v-2633 (N.D. Tex.); *Conaway, et al. v. CSC ServiceWorks, Inc.*, Case No. 2:24-cv-05719 (E.D.N.Y); *In re Bridgeway Center Data Breach Litigation*, Case No. 2024-CA-1395 (Okaloosa County, Fla.); *Saker v. Cherry Street Services, Inc.,* Case No. 24-04205-NZ (Mich., Kent Cty.); *Hufstetler, et al., v. Upstream Rehabilitation, Inc., et al,* Case No. 2024-902563.00 (Ala., Jefferson Cty.); *Lockridge v. Quality Temporary Services, Inc.,* Case No. 4:22-cv-12086 (S.D. Mich.); *Rose v. BHI Energy Services, LLC, et al.*, Case No. 1:23-cv-12513 (D. Mass.); *In re Precision Imaging Centers Data Breach Litigation*., Case No. 2023-CA-009321 (Duval County, Fla.); *In re: Mondelez Data Breach Litig.*, Case No. 1:23-cv-0399 (N.D. Ill.); *Perez v. Carvin Wilson Software, LLC,* Case No. CV-23-00792-PHX-SMM (D. Ariz.); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, Case No. 1:22-cv-00591-TNM (D.C.C.); *In re: Solara Medical Supplies Data Breach Litig.,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.); *McFarlane v. Altice USA, Inc.,* Case No. 20-CV-1297-JMF (S.D.N.Y.). Ms. Murphy's biography and resume is attached hereto as Exhibit 3.

***Andrew J. Shamis of Shamis Gentile Class Action Law Firm***

Andrew Shamis is the managing partner at Shamis & Gentile, P.A. where he heads the class action and mass torts division of the firm. Mr. Shamis and his extensive experience in civil litigation has helped him recover over 1 billion dollars for consumers and plaintiffs throughout the country through his relentlessness, expertise, and calculated approach. Mr. Shamis is routinely certified class counsel which has resulted in many favorable class settlements.

In connection with litigating class cases throughout the country, Mr. Shamis has made it a point to become a permanent member of many bars to effectively represent those communities. Mr. Shamis is permanently admitted to practice law in the states of Arizona, Florida, Georgia, Illinois, Missouri New York, Ohio, Texas, and Washington, as well as the U.S. District Courts for the Southern, Middle, and Northern Districts of Florida, Northern, Eastern, Western, and Southern Districts of New York, Northern and Southern District of Illinois, Northern, Middle, and Southern District of Georgia, Eastern and Western Districts of Michigan, Eastern and Western Districts of Wisconsin, Northern and Southern Districts of Ohio, Southern District of Indiana, Eastern and Western Districts of Missouri, Eastern and Western Districts of Oklahoma, Northern, Western, Eastern, and Southern Districts of Texas, Eastern and Middle Districts of Tennessee, US District Court if Colorado, US District Court for Arizona, and the US District Court of Nebraska. Some of Mr. Shamis' successes include the following[3]:

- *South, et. al. v. Progressive Select Insurance Company, et. al.*, No. 19-cv-21760 (S.D. Fla. 2023) ($48,800,000.00 Class Settlement)

- *Davis, et. al. v. Geico Casualty Company, et. al.*, No. 19-cv-02477 (S.D. Ohio 2023) ($5,756,500.00 Class Settlement)

---

[3] Additional information regarding Mr. Shamis and his firm is set forth in the Shamis & Gentile, P.A., resume attached hereto as **Exhibit 4**.

- *Arevalo, et. al. v. USAA Casualty Insurance Company, et. al.*, No. 2020CI16240 (Bexar County, Texas 2023) ($4,089,287.50 Class Settlement)

- *Albrecht v. Oasis Power, LLC*, No. 1:18-cv-1061 (N.D. Ill. 2018) ($7,000,000.00 Class Settlement)

- *Bloom v. Jenny Craig, Inc.*, No. 1:18-cv-21820-KMM, 2018 U.S. Dist. LEXIS 51686 (S.D. Fla. 2018) ($3,000,000 Class Settlement)

- *Cortazar v. CA Management Services Parent, LLC*, No. 19-cv-22075 (S.D. Fla.2019) ($1,500,000.00 Class Settlement)

- *DeFranks v. Nastygal.com USA Inc.*, No. 19-cv-23028-DPG (S.D. Fla. 2019) ($4,025,000 Class Settlement)

- *Deleon III, et. al. v. Direct General Insurance Company, et. al.*, No. 19-CA-001636 (9th Judicial Circuit, Osceola County) ($2,450,000 Class Settlement)

- *Dipuglia v. US Coachways, Inc.*, No. 17-23006-Civ, 2018 U.S. Dist. LEXIS 72551 (S.D. Fla. 2018) ($2,600,000 Class Settlement)

- *Eisenband v. Schumacher Automotive, Inc.*, No. 18-cv-01061 (S.D. Fla 2018) ($5,000,000 Class Settlement)

- *Flores v. Village Ford, Inc.*, No. 2:19-CV-12368 (E.D. Mich. 2019) ($1,050,000 Class Settlement)

- *Gottlieb v. Citgo Corporation*, No. 16-cv-81911 (S.D. Fla. 2016) ($8,300,000 Class Settlement)

-  *Halperin v. YouFit Health Clubs, LLC*, No. 18-CV-61722-WPD (S.D. Fla. 2018) ($1,418,635 Class Settlement)

- *Hindes v. Ohio Mutual Insurance Company*, No. 20CV007627 (Franklin County, OH) ($1,875,000 Class Settlement)

- *Jacques, et. al. v. Security National Insurance Company*, No. CACE-19-002236 (17th Judicial Circuit, Broward County) ($6,000,000 Class Settlement)

- *Jones v. Washington State Employee's Credit Union*, No. 20-2-06596-5 (Superior Court of the State of Washington County of Pierce) ($2,400,000 Class Settlement)

- *Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW, 2018 U.S. Dist. LEXIS 122098 (S.D. Fla. 2018) ($1,236,300 Class Settlement)

- *McGowan v. First Acceptance Insurance Company, Inc.*, No. 21-CA-004864 (Fla. 9th Cir. Ct.) ($2,200,000 Class Settlement)

- *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147 (S.D. Ohio 2020) ($12,000,000 Class Settlement)

- *Papa v. Greico Ford Fort Lauderdale, LLC*, No. 1:18-cv-21897 (S.D. Fla. 2018) ($4,800,000 Class Settlement)

- *Patterson v. McCarthy Ford, Inc.*, No. 2020-CH-07042 (Circuit Court of Cook County, Illinois County Department, Chancery Division) ($1,870,000 Class Settlement)

- *Pena v. John C. Heath, Attorney at Law, PLLC*, d/b/a Lexington Law Firm, No. 18-cv-24407-UU (S.D. Fla. 2018) ($11,450,863 Class Settlement)

- *Petit Beau, et. al., v. Ocean Harbor Casualty Insurance Company*, No. CACE-18-029268 (17th Judicial Circuit, Broward County) ($4,500,000 Class Settlement)

- *Picton v. Greenway Chrysler-Jeep-Dodge Inc. d/b/a Greenway Dodge Chrysler Jeep*, No. 19-cv-00196-GAP-DCI (M.D. Fla. 2019) ($2,745,000 Class Settlement)

- *Wijesinha v. Susan B. Anthony List, Inc.*, No. 18-cv-22880 (S.D. Fla. 2018) ($1,017,430 Class Settlement)

### *Proposed Liaison Counsel – Donald J. Enright of Levi & Korsinsky, LLP*

The Proposed Liaison Counsel, Donald J. Enright of Levi & Korsinsky, LLP, is an extremely well-respected member of the Maryland Bar and this Court, having practiced for decades in this District. He is well versed in this District's local rules and the federal rules of civil procedure. He has previously served, and currently serves as class counsel in many pending class actions in Maryland and other federal courts and is deeply familiar with all phases of class action litigation. *See* **Exhibit 5** (resume of Levi & Korsinsky, LLP), attached hereto.

### c.    *Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to this Case.*

The resources that Proposed Interim Class Counsel have already committed and will continue to commit to the case also strongly supports the appointment of the Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources

are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as their firm résumés and counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the putative class.

> **d.** ***Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel.***

Plaintiffs and their counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of the named Plaintiffs and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences

expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* Manual for Complex Litigation § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed

working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Proposed Interim Class Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

Finally, this Court should appoint Proposed Interim Class Counsel because their firms filed the first actions against Defendant. *See Shane White v. Medical Review Institute of America, LLC*, Case No.: 2:22-cv-00082-DBP, 2022 U.S. Dist. LEXIS 132016, at *8 (D. Utah July 22, 2022) (collecting cases). It is well-established that courts across the country give deference to counsel in the first-filed cases where, as here, they are more than qualified to handle the action. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D. N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the

potential claims in this action."); *see also In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc*., 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. Dairy America, Inc*., 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment of interim class counsel, appointment of the first-filed counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request the Court grant this Motion and enter an order: (1) consolidating the Related Actions and future actions into the first filed action, under the new case style: "*In re Center for Vein Restoration Data Breach Litigation*"; (2) appointing Jeff Ostrow of Kopelowitz Ostrow P.A., David K. Lietz of Milberg Coleman Bryson

Phillips Grossman, PLLC, A. Brooke Murphy of Murphy Law Firm, and Andrew J. Shamis of Shamis Gentile Class Action Law Firm as Interim Class Counsel and Donald J. Enright of Levi & Korsinsky, LLP as Interim Liaison Counsel; (3) staying the Related Actions, including the Defendant's responsive pleading deadlines, and setting a deadline for the filing of a single Consolidated Complaint 60 days after the court's order consolidating the cases and appointing leadership; and (4) setting the deadline for Defendant's response to the Consolidated Complaint 60 days thereafter, setting a deadline 60 days thereafter for Plaintiffs' response, followed by 21 days thereafter for Defendant's reply.

DATED: December 20, 2024                    Respectfully submitted,

                                            /s/ Thomas A. Pacheco
                                            Thomas A. Pacheco (MD Bar No. 21369)
                                            MILBERG   COLEMAN   BRYSON   PHILLIPS
                                            GROSSMAN PLLC
                                            900 W Morgan Street
                                            Raleigh, NC 27603
                                            Telephone: (212) 946-9305
                                            tpacheco@milberg.com

                                            Jeff Ostrow
                                            KOPELOWITZ OSTROW P.A.
                                            1 W. Las Olas Blvd., Ste. 500
                                            Fort Lauderdale, FL 33301
                                            Telephone: (954) 525-4100
                                            ostrow@kolawyers.com

                                            David K. Lietz *
                                            MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN, PLLC
                                            5335 Wisconsin Ave., NW, Suite 440
                                            Washington, DC 20015
                                            Phone: 866.252.0878
                                            dlietz@milberg.com

24

A. Brooke Murphy *
MURPHY LAW FIRM
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

Andrew J. Shamis, Esq.*
SHAMIS & GENTILE P.A.
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299


*Plaintiffs' Counsel and Proposed Interim Liaison Counsel*


Donald J. Enright (#13551)
Jordan A. Cafritz (#20908)
LEVI & KORSINSKY, LLP
1101 Vermont Ave. NW, Suite 700
Washington, D.C. 20005
Tel: (202) 524-4290
Email: denright@zlk.com
Email: jcafritz@zlk.com

*Proposed Liaison Counsel*

*\*Pro Hac Vice forthcoming*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated and Defendants Counsel via electronic mail on this December 20, 2024.

*/s/ Thomas A. Pacheco*
Thomas A. Pacheco